## CoLÓN v. ROIG.

### APPEAL from the District Court of San Juan.

No. 64.—Decided May 19, 1904.

CONTRACTS—VALIDITY AND FORM OF THE SAME—ESSENTIAL REQUISITES.—Contracts shall be binding whatever may be the form in which they have been executed, provided the essential conditions required for their validity exist.
ID.—EXECUTION OF INSTRUMENT—CONSENT—CONTRACTING PARTIES.—Where the law requires the execution of an instrument or other special formality in order to make the obligations of a contract binding, the contracting parties may compel each other to comply with said formalities from the moment in which consent and other requirements, necessary for their validity, have taken place.
CIVIL PARTNERSHIP—FORMATION OF.—A civil partnership may be established in any form whatever, unless real property or property rights are contributed to the same, in which case it is necessary to form it by a public instrument and to make an inventory of all the property, which must be attached to the instrument.

ID.—COMMERCIAL PARTNERSHIP.—The requirements of the Code of Commerce with respect to commercial partnerships, i. e., a public instrument and its presentation at the public commercial registry for record, are not applicable to civil partnerships, and in many cases the presence or absence of such requirements is the only feature by which to determine whether the partnership is civil or commercial.

ID.—CAPACITY OF THE PARTIES AND OBJECT OF THE CONTRACT.—In order to determine the execution of the contract of civil partnership, it is necessary to determine whether or not the personal, real and formal elements incident to the same are present; and where the parties have capacity to bind themselves and the object of the partnership is lawful, the contract is valid even though it may not be reduced to a public instrument, which is not an essential requisite, provided no real estate has been contributed thereto.

ID.—A civil partnership having been formed for the purpose of engaging in the performance of certain work, the circumstance that said partnership, in the ordinary course of its business, temporarily established a provision and merchandise store and bakery, cannot in any way alter its nature, nor convert it into a commercial partnership, nor influence the rights and duties of the members thereof between themselves.

ID.—LIABILITY OF MANAGING PARTNER.—A partner who has had charge of the management of the partnership during the time it was in existence, and who, upon the dissolution thereof, assumed charge of all the stock, is obliged to render an account of his management to the other partners for the time the same lasted, and is also liable for the payment of profits belonging to the other partners.

ID.—LIABILITY OF PARTNERS TO FIRM.—A partner who has bound himself to contribute a sum of money to the firm and fails to do so is at law a debtor for the interest thereon from the day on which he should have contributed it, without prejudice, in addition thereto, to making indemnity for the losses and damages which he may have occasioned.

ID.—DISTRIBUTION OF PROFITS AND LOSSES.—The amount of capital which each of the partners should have contributed to the firm, in addition to his personal labor, being equal, the benefits obtained therefrom, as well as the losses, should be distributed among the partners in equal parts.

COSTS.—Costs should be imposed upon the litigant who loses his case on all points, and in other cases must be imposed by the court in accordance with equity.

## STATEMENT OF THE CASE.

This is a declaratory action brought in the District Court of San Juan by Jaime Colón, of legal age, married, a master builder and resident of Ciales, plaintiff, represented in this Supreme Court by Attorney Jacinto Texidor, against José Roig Colomer, of legal age, married, an agriculturist and a resident of Utuado, defendant, represented by Attorney Juan Hernández López, in the matter of rendition of accounts, which

case is pending before us on an appeal taken by the defendant from the judgment rendered by aforesaid district court, which reads as follows:

"Judgment.—In the city of San Juan, Porto Rico, June 11, 1903. An oral and public hearing was had of this declaratory action prosecuted by Jaime Colón, of legal age, married, a master builder and resident of Ciales, plaintiff, represented by Hilario Cuevillas Hernández, against José Roig Colomer, of legal age, married, an agriculturist and resident of Utuado, defendant, represented by Attorney Juan Hernández López.

"Jaime Colón brought an action against José Roig Colomer, praying that the same be sustained and that judgment be rendered declaring that the civil partnership of Roig & Colón, builders, was dissolved and ceased to exist through the sole and illegal acts of José Roig Colomer; that the latter is under obligation to render an account to him, covering all expenses and profits of the copartnership up to the day when the contract by the job with Carlos Ereño came to an end, including therewith the capital contributed by both partners and to deliver to him his capital and profits up to aforesaid day, and such other benefits as might be obtained under the contract, according to a fair computation by experts, with costs.

"This action is based upon the following facts: The defendant, knowing the plaintiff's skill as a master builder, and because it suited his convenience to be associated with him for the purpose of contracting all kinds of works, proposed that they form an industrial copartnership under aforesaid name and style, and which was to use a seal to affix to their documents, and whose business would be to undertake the construction of all public or private works, by direct or indirect contracts or by the job. Said copartnership was to continue for four years. The management, account book and funds were to be in charge of the partner Roig Colomer, while the technical direction, personnel and execution of the works would be attended to by the partner Colón; the partners were to contribute the necessary sums for the construction of the works contracted, the profits thereof to be divided equally between them, each partner being at liberty to draw such amounts as he might reasonably require for his expenses, to be charged to his private account and deducted from the profits obtained, after mutual agreement. A contract by the job was entered into with Carlos Ereño for the construction of the road from the 'Caguanitas' bridge, of Utuado, to the 'Caniaco' ford. By the contract between Ereño and the Roig &

Colón copartnership, twelve and one-half per cent. of the profits was allowed to the former on all work executed according to certificates where they had met agreeably to a letter from the former, dated at San Juan early in January, 1900, for the purpose of purchasing tools and equipments and raising funds, Roig suggested the advisability of negotiating a loan of five thousand *pesos,* provincial money, with the Banco Español de Puerto Rico, he (Colón) to sign a promissory note for said amount, which transaction was not carried out, and the note withdrawn, it being decided that each partner should contribute the necessary funds for the work according to agreement. On January 15, 1900, the work was begun under the direction of Colón, who continued until April 15 of same year, when he was obliged to leave, owing to an affront of which he was made the victim while attending to the works, by one Ramón Martínez, a mason, who abused and assaulted him, saying he acted in defense of Roig Colomer. This brought about an abnormal condition in his health which lasted until the 27th of aforesaid month, when, feeling better, he resumed the direction of the works, but had to retire the following day for the purpose of recuperating. Under the style of Roig & Colón accounts current were opened with several firms and various transactions were performed which show that the partnership did really exist and that it was so recognized by Roig. No public or private deed of the contract was executed, but the partners intended to have it done and had furnished the notary with the necessary data, the omission being due to lack of time. The plaintiff brought with him tools worth $300 and paid in $1180, provincial money, while José Roig declared that he had contributed $3,000 of the same money. The copartnership had no need of making large disbursements because the credit system was resorted to, and soon with the sums received on certificates for work executed, the funds advanced, and the proceeds of merchandise sold, there was enough to continue and finish the works for which contracts had been entered. For the sake of convenience a provision and dry goods store was established together with a bakery, to supply the needs of the laborers, who numbered not less than four hundred. But Roig, calculating that what was good for both would be better for himself alone, watched his opportunity, which came, thanks to the indignity whereof he (Colón) had been the victim. Owing to hard work and exposure to the inclemency of the weather, the latter fell sick with fever and on April 28, 1900, retired in order to obtain treatment. He requested Roig, during the last fortnight of April, 1900, to strike a balance of the work executed, and

to make an inventory of the implements and materials that had been prepared, as also of the stock on hand in the store. This he did, and on May 15 communicated the result to Colón, who informed him that he refused his approval of the balance and inventory, and objected to the data produced as being insufficient, inaccurate and prejudicial to his interest. Thereupon Roig sent him another letter, ratifying the preceding one, and containing, more or less, the same errors, which gave occasion to serious replies, as shown by the correspondence filed by him, and then the rupture came. On June 24 of aforesaid year, Colón, having recovered from his illness, went to the place of work for the purpose of taking charge of same, but his right was ignored, Roig ordering him to apply to the courts and making use of insulting language such as, for instance, calling him publicly a thief, adding that he would compel him to pay five hundred dollars, and warning him to keep away from the work, at which Colón, who was thereby humiliated before the laborers, protested. The defendant had disposed of all his belongings as also of the store which had been established by mutual agreement. The accounts produced by Roig showed omissions and concealments which reduced the assets, the object whereof was to defraud Colón and upon summoning him to appear in proceedings to secure a conciliation, he failed to do so. As legal grounds plaintiff cited sections 1091, 1278, 1279, 1667, 1680, 1682, 1700, 1705 and 1707 of the Civil Code, and the judgment of the Supreme Court of May 12, 1897, alleging further that the conduct of Roig Colomer had been rash and inconsiderate.

"The complaint having been admitted on July 17, 1901, notice thereof was served upon the defendant, who answered praying that the same be dismissed, with costs, and alleging the following facts: That Ereño had been awarded the contract for the construction of the road between Caguanitas and Bacupey for thirty thousand dollars, as sole contractor; that he assigned to Roig Colomer by private contract by the job the portion from Caguanitas to Caniaco, which was approximately one-half of the work to be executed by him; that Roig had already begun work when Colón, through the intervention of Alonso Ruiz, repeatedly asked to be employed in public works, and out of personal regard for Alonso, and thinking that he (Colón) could in some way be useful to him, he had decided to accept his services; that in one of the interviews the parties had with Alonso, the plaintiff intimated a desire to form a partnership, whereupon Roig imposed conditions without which no

copartnership could be effected, one of which being the immediate payment of three thousand dollars as his individual share, Colón replying that he had coffee stored in Ponce which he would convert into cash without loss of time and would pay in three thousand dollars to the firm. Being pressed by Roig to sell the coffee and deliver the money, Colón then proposed that a store be established where the laborers could get their supplies, boasting that he had credit in several mercantile firms in this capital; and while yet these experiments had hardly been decided upon, being merely projects subject to conditions, he appeared in Utuado at the place where the works were being executed under the direction of Roig, bringing provisions and other goods, according to invoices charged to the unknown firm of Roig & Colón, which had not yet been agreed upon, and accompanied by a large retinue of assistants, friends of his, who were to take charge of the little store. Roig, in the presence of Alonso Ruiz, who had recommended him, refused to accept Colón as a partner until he had paid the sum fixed as a necessary condition, said Ruiz being appointed mediator. Two days after his arrival in Utuado he made his appearance with the personnel above referred to; but shortly after that José Ruiz Colomer was called upon to pay the invoices of merchandise taken by Colón. Certain irregularities occurring at the store led Roig to doubt the faithfulness of one of the clerks whose actions evinced a lack of integrity, and he was compelled to dismiss him. Colón was in the habit of taking, from time to time, sums of money out of the safe, which appeared in his account-current. On January 20, he was requested by Roig to pay the three thousand dollars, and he replied that it would be necessary for him to go to Ponce and sell the coffee he had there. Thus matters stood when the second fortnight of February arrived, and it being impossible to continue under such conditions, because the aforesaid invoices had to be paid and a settlement was imperative, he was compelled to tell Colón that he must either withdraw from the works or fulfil his promise. A few days thereafter Colón with much difficulty managed to pay $1180 which was credited to his account, for, as the copartnership had not yet been constituted, Roig continued to keep the books under his sole name, of which fact several firms were notified by letter. Colón's harsh and churlish treatment of the laborers provoked quarrels, disturbances and strikes, and one of the bricklayers had a personal encounter with him. The man was reprimanded, and Colón, realizing the situation, decided to withdraw. Both agreed to give up all idea of forming the proposed copartner-

ship, and the plaintiff forthwith received from Roig the $1180 he had deposited as his share, in a draft for $1000 and $180 cash, the money he had taken being left to be settled upon liquidation of the works executed, according to the accounts that would in due time be rendered. Under the circumstances above rehearsed, it had been impossible to come to an agreement as to a copartnership. Roig liquidated and closed the store with a loss of four hundred dollars, dismissed the clerks and forwarded to Colón his personal account and the result of the balance sheet. Colón presented his objections to certain items which were explained and in some cases corrected. He was not again heard from until two months later, when he made his appearance accompanied by a person surnamed Griffo who ordered him in an imperious tone to pay his companion five hundred dollars he owed him. This Roig refused to do, as he had no money there, and as he (Griffo) adopted an angry and threatening demeanor, the defendant became indignant and put him out of the house, reporting the occurrence to the municipal court. As legal grounds the defendant cited sections 1614, 1681, 1682, 1686 and 1707 of the Civil Code, and further alleged that the stipulations of a contract that are held in suspense prevent the effectiveness thereof until said stipulations are complied with, and costs should be imposed upon the obstinate litigant.

"The case having been opened for the submission of evidence there appears in the plaintiff's evidence an admission by the defendant that at the instance of Pedro Alonso Ruiz he had an interview with the plaintiff for the purpose of forming a copartnership, when it was intimated by the former that six thousand dollars must be brought to the business in order to become a partner, which interview had taken place in December, 1899; that Colón had had no intervention in the negotations between the deponent and Ereño; Roig acknowledges the letter of January 3, 1900, addressed by him to Colón, which reads: 'I have arranged, or rather closed the deal, for the execution of the necessary works between Caguanitas and the Caniaco ford. Ereño was unyielding, but in consideration of the prices fixed for the units, and being anxious to work profitably, I saw no objection to allowing him an increase up to twelve and one-half per cent., at which rate the bargain was closed. Come immediately, as I am waiting for you here, for I shall not return to Utuado until Tuesday to measure the first portion of the work, which must be done before the 15th instant, and there are tools and implements to be purchased here which I do not wish done with-

out your being here, so that we may act in concert.' The defendant
declared that he had never formed the copartnership of Roig & Colón
nor spoken to Nater about the execution of the deed; that the work
was commenced on January 15, 1900; that Colón went to the works on
the 16th, at noon, and began to take charge of the same from the
17th; that they established in partnership a dry goods and provision
store, also a bakery; that said store was entered in the Registry of
Utuado in the name of Roig & Colón, he counting upon Colón pay-
ing his portion of the capital, according to agreement; that the
checks, in anticipation of the foundation of the copartnership, which
did not take place, bore the seal of Roig & Colón, until, seeing that
Colón failed to make good, he burned the seal in the latter part of
March; that Colón did not make any sketches or mark out ground-
plans, as this was not his business, he being a carpenter, and if he
did build the Utuado church, it was as a mason and carpenter, under
the direction of Pedro Alonso; that deponent had charge of the
administration and direction of the works; that at the time of the
second contract with Ereño, Colón had no connection with the work;
that with the money collected from Ereño the accounts of Roig &
Colón for expenses occasioned by the works, from January 15 to the
end of February, were paid; he mentions the employees of the store
who had been brought by Colón, adding that the latter had on Feb-
ruary 10th paid $1180 toward his share in the copartnership, which
money he had brought from Ponce and was credited to his account,
the same being afterwards returned to him (on April 10) together
with other sums; that said Colón had brought to the work various
carpenter's tools the value whereof is unknown to him, and a lot of
iron; that when Colón went away because he had been slapped by
a bricklayer, saying that he could not continue under the circum-
stances, a balance was struck and on April 9, he was paid the money
alloted to him for his services; that on Palm Sunday, owing to de-
ponent's absence, Colón paid the laborers and left the key to the
safe with Arturo Colón; he does not know whether or not the plain-
tiff saw the cash book on that day; that on May 14th he delivered to
Colón's son, to be carried to his father, a detailed inventory and
balance sheet; that on May 15 he did not receive any letter repudiat-
ing the same, but one containing observations which were attended
to. He acknowledges letters 8 to 11 accompanying the complaint,
signed by him and addressed to the plaintiff, namely, those dated the
17th and 21st of May, the former of which reads in substance as
follows: 'When proposing the formation by us of a copartnership, I

spoke to you in clear and precise terms, and as it seems you have forgotten them, I repeat that the nature of the work which it was proposed to undertake, first of all required a cash capital, and confining myself to the matter of the deal made by myself and Ereño, I have already told you that $6,000 in cash was needed; so then, if you wish to have a share in the profits you must advance $3,000.' I also told you that this capital could not be disposed of for family expenses nor any other private matters. As to your observations concerning the inventory, I shall attend to all those that are just, and especially to all such involuntary omissions as have been made, but not as to those regarding the work, for only the working days included up to the 10th can be considered in calculating your share of the profits,' and the other reads: 'I have the pleasure of transmitting to you the result of the balance sheet of the store and Ereño's account. By an inadvertance the wages of the engineer's brigade, from April 3 to 11, included in the last certificate of work executed, and amounting to $104.82, provincial money, were not credited;' that Colón has never made his appearance for the purpose of taking charge of the works, nor did he do so on June 24th, except to present a claim of five hundred *pesos* in a threatening manner; that it is not true that purchases were made in the business houses of this city mentioned by him, for account of Roig & Colón, the truth being that the goods were taken by the latter availing himself for the purpose of the copartnership's name; that he had addressed a letter to Abarca in which he had affixed the seal of Roig & Colón, believing that the copartnership could be formed, which letter he acknowledged, the signature being his; that after the second contract by the job, he had not competed with Ereño for awards of public works; that prior to the job with Ereño, he had no contract with the administration; that neither by registered letter nor by notarial documents had he requested Colón to pay his share of the capital, but he had done so verbally on several occasions. The following interrogatories were declared irrelevant by the court: 1. Whether it was true that upon the termination of the second job, of the two they had contracted with Ereño, the deponent had come forward as a bidder for the other work that was being contracted for, thus competing with Ereño who continued to make bids as he had been doing up to that time? and 2, Whether it is true that none of the bids made by him for portions of the road from Utuado to Arecibo had been accepted? Exception was taken by counsel for plaintiff to the ruling of the court on the ground that thereby his client was deprived of a means of defense.

"The plaintiff filed as supplementary evidence: Copies of the newspaper 'La Correspondencia de Puerto Rico,' of March 25 and 30, 1900, the latter copy to be had in mind when Carlos Ereño should testify, and the other that note might be taken of the paragraph entitled 'Causes of the Strikes.' The alcalde and municipal depositary of Utuado having been summoned, they were shown the certificate issued by the former, stating that he had examined the registry of industry and commerce of 1899 to 1900, and that under the third quarter of the year, Roig & Colón appear on said registry with a dry goods and provision store, in *barrio* Rio Abajo, within this district (meaning Utuado), which entry was made on January 24, 1900; that on April 14, José Roig Colomer reported that he had sold aforesaid store to Bartolomé Alzamara, the copartnership having paid into the municipal treasury, for the third and fourth quarters, $15.30. Underneath said document appears the words 'Received eighty-five cents, gold. T. Fontán Correa, Depositary,' as also the seals of the mayor's and depositary's offices opposite and below their respective signatures. The witnesses testified that the document is authentic and accords with the entries of the books to which they refer. Upon a comparison of the certificate of the record of proceedings had to secure a conciliation, the same is found to agree with the original. Pizá Hermanos having been requested to produce their letter-book for the purpose of comparing the letters addressed by them to Roig & Colón, on March 14 and 29, 1901, reminding said firm that the invoice of January 8 had been a cash transaction and that they expected to collect the amount at the earliest opportunity, the same were found to agree perfectly, the only discrepancy being in the year, which on the letter book was 1900, while the letters belonged to the present year. The copies in the letter-book bore no signature, because, according to Pizá, it was not customary to sign them. Successors of Roses & Co. being called upon to exhibit their books and take out copies of the entries from the ledger and journal referring to the sale of a lot of rice to Roig & Colón in 1900, stated that on March 16 José Roig Colomer had purchased sixty bags of rice which he took away on the 16th, 17th and 21st, the value whereof was $644.26 which he paid on May 9, no entry of the sale of rice referred to in the summons appearing on the books. The clerk of the municipal court of Cathedral district went to the office of Villar & Co., who were invited by him to show their books, and upon examination of the journal the following entry appeared on page 409: 'José Roig Colomer to cash. To draft in favor of Jaime Colón, $1,000;' and

on page 67 of the ledger there appears under date of April 27 a debit of $1000. They produced the letter of advice of April 24, 1900, which reads: 'As I notified you that I might have occasion to draw, now, that I have dissolved the copartnership I had formed with Jaime Colón for the construction of these works, I have decided to do so with an order upon you in favor of my aforesaid former partner Colón for $1000, hoping that the same will find the usual protection accorded to my drafts. José Roig Colomer.'

''In addition to the above evidence submitted by the plaintiff, there appears: 1. That the defendant having been enjoined under admonition to produce the letter dated May 15, 1900, which he claims was addressed to him by Jaime Colón, it being shown that he was requested to do so four months before, he replied that it had been mislaid and he had not been able to find it; (2) That upon attempting a comparison of the balance sheet and inventory forwarded to Jaime Colón by José Roig Colomer, which accompanied the complaint, with the book produced by the latter, it was found impossible to do so because the items entered in said book did not agree with those of the abstract of account; and counsel for plaintiff having intimated that there must be some other books, the attorney for defendant replied that it was the only book handed to him by his client. The other evidence for the plaintiff was then taken up, the same consisting of the three accounts forwarded by Roig & Colón, an abstract of account of general expenses, another from Carlos Ereño to José Roig Colomer, and another with this heading 'Account of Jaime Colón with José Roig Colomer.' It was found that the entries made in the accounts do not agree with the book produced, said items not appearing in the latter. Counsel for the plaintiff protested at the non-production of the books and original letter, as called for according to the record. The court, on motion of counsel for the parties again ordered that the proof of comparison of books and letter be taken, which was carried out from December 6 to 12, 1902, when the defendant produced the only book he said he possessed, and in which, he added, there appear the desired items and antecedents. The court clerk declared that said book lacked the requisites provided for by the Code of Commerce, and that there was no authorization whatever for opening the same. The balance sheet and inventory having been compared with the book, Roig Colomer stated that with respect to the inventory no result could be reached by a comparison, because it was merely a list of tools and effects that had been in the possession of several overseers and employees of the work, the same

being made when Colón withdrew from said work, it being stated that therefore the comparison could not be made. The comparison of the abstract of account of profit and loss, from January 15, 1900, when the works are said to have been begun, to April 14 of the same year, was then proceeded with, and it was found that the item 'certificates of work executed' did not agree with the account, the book showing a balance of $13,920.97, while that of the account is $13,183.08, an item of $1,318.30 of Carlos Ereño and another of $105.34, having been omitted in the latter, and one of $329.58 not appearing in the book. The statement of prospective profits and resumé is found correct, but the item of $115.01 for office expenses, which is claimed to consist mostly of stub-books and memorandum books, does not appear in the book. Upon a comparison of the general inventory of stocks appertaining to the section of the road between Caguanitas and Camiaco this fourteenth day of April, 1900, the same is found to agree with the book in every particular. The account of Jaime Colón with José Roig Colomer, on folio 74 of the record, is a copy taken from the book with the following variations: the item of $25 credited in the account does not appear in the book, but instead, there is one of $45, divided into two items, namely, $20 and $25; the item of $11 in the book bears a different date in the account; that of $27 in the debit had not the same specification in the account; that of $36.92 in the debit is not found in the account; Ereño's account does not tally with the books, Roig declaring that it was kept in a memorandum book; the account of general expenses is a reproduction of that contained in the book.

"From the evidence of witnesses produced by the plaintiff it appears that the testimony of ten witnesses was taken. Four of these testified that they had been employees of Roig & Colón and that at the store checks bearing the seal of Roig & Colón were received, two of them adding that the store did business under aforesaid name. Another, besides the four mentioned, had heard that the work was done by Roig & Colón; that the copartnership had a dry goods and provision store; that he had seen Colón at work, who directed the construction of the road. Another knew of the existence of the copartnership from some tickets issued by them bearing the seal of Roig & Colón. The inspector of the works corroborated the statement as to Colón's duties, and testified that the latter directed the construction of the works under instructions received from the government engineer, and traced the location therefor. He did not know of his own knowledge whether Colón was a partner or an employee of Roig's, although he at first had heard that

he was a partner. Another of the witnesses declared that he had been introduced to Colón by Roig, who told him that he was his partner, and had seen the checks with the seal of Roig & Colón.

"Finally, with the evidence for the plaintiff there appears a certificate from Dr. Francisco Sulsona, the authenticity whereof had been vouched for by him before the District Court of Arecibo, to the effect that he had rendered medical assistance to Jaime Colón from April 13, 1900, and that he was suffering from malarial fever, which prevented him from pursuing his habitual occupation, and at the date of said certificate, June 25, 1900, he was in the period of convalescence; the deposition of Pedro Alonso Ruiz, given at his house on account of illness, before the presiding judge, from which it appears that José Roig Colomer and Jaime Colón had visited him for the purpose of forming a copartnership, each partner to contribute $3000 the object of said copartnership being the construction of a portion of a road that had been turned over by Ereño to Roig; he did not know whether Roig had begun the work when Colón came to him for a recommendation to be allowed to work thereon, which led to the copartnership by the express consent of both parties; that a month after the interview deponent had talked with Roig, who informed him that Colón had contributed nothing to the copartnership, although he had been engaged on the works and drawing money for his private expenses. In the interview above referred to, Colón had offered to sell out the coffee he had on deposit in Ponce, as also to avail himself of his credit in several business houses of the capital; but deponent did not know what agreement had been arrived at, as this would be the object of this condition for the contract of copartnership. It was true that Colón had proposed the establishment of a store for the laborers, to which Roig had evinced reluctance, owing to the difficulty of securing honest and competent persons, and for other reasons. Deponent declared that Roig had advised him to draw up a draft of the contract of partnership, both he and Colón showing interest therein, but he had refused to write down the basis, believing it was a matter exclusively appertaining to the parties concerned. Upon being cross-questioned, he stated that he had heard both parties mention the deed of partnership to be executed before Nater; but that Roig had intimated that inasmuch as Colón had not paid in the $3,000 referred to, it was impossible to execute the deed, for lack of the principal basis, namely the capital. Replying to questions put by Colón, he said that he could not give the exact date of the conver-

sation about the deed, because he was not interested in preserving the information.

From the evidence for the defendant it appears that the plaintiff admits that in December, 1899, he already had relations with the adverse party, as they intended to take up the construction of the electric railroads. He had never, he said, executed a written con- tract of partnership with Roig. Neither was it true that Alonso Ruiz had recommended him, nor had he ever agreed to enter as an assist- ant in the construction of the road, nor entreated Roig to be admit- ted as a partner, they having agreed to form the copartnership with- out fixing any amount of capital beyond the money required for the prosecution of the work. In addition to the $1180 he had contri- buted $400 in tools, and $80 in coffee for the store. Roig had not requested him to complete the $3,000. He had gone to the business houses of Pizá, Egozcue and Cuétara alone, and with Roig to that of Santisteban, for the purpose of purchasing dry-goods, provisions and tools, the accounts being opened in the name of Roig & Colón by order of the deponent. It was not true that after delivering the above-mentioned sums, he had drawn money for the support of his family, but only for his personal needs, which he would ask Roig to give him. The mixed store and bakery had been opened for account of Roig & Colón, the employees being appointed by mutual consent. He did not know if the store was closed afterwards because he had been sick, and was apprised of this when the inventory and balance- sheet were sent him. There were threats of strikes in the work on account of the checks and certain rations given to the *peons.* The brick-layer Martinez coming forward on the road, had provoked him and attempted to assault him, but had only scratched him slightly. It was not true that he left the work on that day, but on Good Friday, 1900. He was there on April 23d and went back sick on the 24th. On June 23d he was at the office with Grif- fo, returning with him on the 24th. He ordered Roig to pay Griffo $500 for his account, which Roig refused to do. It was not true that he had used the words attributed to him by Roig, against which he, and not Roig, had protested, said words giving rise to an alterca- tion on the road. Roig had not presented his account when he with- drew from the work, but in May sent him an abstract of the balance- sheet and inventory as a partner. It was not true that Roig had re turned the $1180 contributed by him to the copartnership, nor that he had received $180 of said sum in cash, but, instead, a draft for $1,000 on Villar, in April, and $100 for his expenses, on the 24th of said month.

"Roses & Co. having been required, at the instance of the defendant, to produce a copy of a letter from José Roig Colomer, dated March 24, 1900, they did so, said letter reading as follows: 'The copartnership of Roig & Colón not having been constituted, Colón being only my assistant for the construction of the work, I pray you to enter under my sole name the fifty bags of rice I purchased from you while in your city.' Villar & Co. being called upon to produce the draft made to the order of Jaime Colón, they did so, and it was found to read as follows: 'Utuado, April 24, 1900. Please pay to Jaime Colón or to his order, one thousand *pesos,* provincial money, and charge the same to my account, according to advice of this date. José Roig Colomer. Pay to the order of Roses & Co., value received.—Arecibo, April 26, 1900. Jaime Colón. Pay to the order of Mullenhoff & Korber, value in account. Successors of Roses & Co. Received payment, Mullenhoff & Korber, pp. Eword.' (sic). Pizá Hermanos, having been called, stated that on February 28, 1900, an account with Roig & Colón was opened in their books, which was closed on April 9 of the same year, and they remembered that the amount was paid by José Roig Colomer, the receipt however being made out in the name of Roig & Colón, according to the title of the account. Cuétara Hermanos and Manuel Egozcue testified to the same effect.

"From the evidence of witnesses submitted by the defendant it appears that five of these gave their testimony, two declaring that they had been employed by Roig, one of them adding that the only director was Roig, Colón being his assistant; that he had heard of a projected copartnership; that owing to disorders and quarrels the store had been closed; that the conduct of Colón had led to disputes and strikes; that Colón was with him when the encounter with the brick-layer took place, this being the cause of his quitting the work, which he did taking leave of the employees and drank with them a bottle of brandy. The other of the two aforesaid witnesses testified that Colón directed the work on the road; that nearby there was a store belonging to Roig and Colón which was closed by Roig on account of disorders; that he had witnessed the quarrel between the brick-layer and Colón; that Colón withdrew from the work, and he had not noticed the incident about the bottle of brandy. Another witness, a foreman appointed by Roig, testified that Colón worked in the clearing of the ground; he did not know whether he was a partner or an employee, but he directed the works. Nothing worth considering appears from the testimony of the other two witnesses.

"Presiding Judge Juan Morera Martínez prepared the opinion of the court, as follows:

"Contracts shall be binding, whatever may be the form in which they may have been executed, provided the essential conditions required for their validity exist, and should the law require the execution of an instrument or other special formality in order to make the obligations of a contract binding, the contracting parties may compel each other to comply with said formalities from the moment in which consent and the other requirements, necessary for their validity, have taken place, according to the provisions of articles 1278 and 1279 of the old, or sections 1245 and 1246 of the Revised Civil Code.

"A civil partnership may be established in any manner whatever, unless when real property or property rights should be contributed to the same, in which case not only a public instrument shall be necessary, but an inventory of said property is required to be made, which must be attached to the instrument. For this reason the requisites prescribed by the Code of Commerce for commercial associations, namely, a public instrument and the presentation thereof at the commercial registry for admission to record, are not necessary for the constitution of a civil partnership, the presence or absence of said requisites being, in many cases, the only feature by which to distinguish whether the partnership is commercial or civil.

"On considering the evidence, taken together, it clearly appears that the partnership existed for a definite purpose, namely, the construction of the portion of road from the post of Caguanitas in Utuado, to the Camiaco ford, and that said partnership had established a provision and merchandise store and baker's shop for the purpose of supplying the laborers engaged on the work, thereby sparing them the inconvenience of long journeys. Said store was entered on the record at the mayor's office of Utuado on January 24, 1900, and appeared on the register of commerce and industry for the third quarter of 1899-1900, under the name of Roig & Colón, which establishment figured as having paid the municipal taxes for the third and fourth quarters of said year.

"Aforesaid record, the payment by Colón to Roig of the sum of $1180 admitted by the latter to have been received by him on February 10, the carpenter's tools and lot of iron contributed by the former, the forwarding of the inventory and balance-sheet of the store by the defendant to the plaintiff, the accounts produced by Roig to Colón, the former's offer to attend to the correction of the errors and omissions observed by the latter, and the letter of advice

of April 24, 1900, addressed by Roig to Villar & Co., taken together with all the other evidence submitted, lead to the conviction that said copartnership existed between the plaintiff and defendant.

"In order to determine the constitution of a civil partnership, account must be had as to whether or not the personal, real and formal elements appertaining to such partnership are met therein; and where the parties are competent to bind themselves, and the object of the partnership is lawful, and no public instrument is required, as hereinbefore stated, because no real property was contributed thereto, the establishment of a provision and merchandise store and bakery is of no importance whatever, this being an incident of the contract of partnership, the essential or principal object whereof was the construction of the aforesaid portion of road; therefore, neither by its origin, object nor purpose, can the establishment of aforesaid store affect the mutual rights and obligations of the partners.

"The basis of the contract being a combination of labor for a definite object, said contract cannot in any manner be affected by the fact that no agreement appears as to a specific contribution to the capital, in view of article 1665 of the former Code and section 1567 of the one in force, and of the admission by the defendant that Colón had paid him the $1180 mentioned in the preceding conclusion drawn from the findings of fact; for which reasons and those previously set forth, it would not be just to declare null and void the stipulations and acts accomplished, because of the lack of a document not required by law, and rendered unnecessary by the evidence of the existence of said contract.

"The defendant has failed to show the legal reasons for considering the partnership as having been dissolved on the date when it was so declared by Roig Colomer, as no such reason could be found in the illness from which Colón suffered since April 15, 1900, in view of the physician's certificate mentioned in the eighth finding of fact; and if such illness could in some manner prejudice the interest of the partnership, this is no reason for the dissolution thereof, but a matter to be taken into account upon the liquidation of the profits.

"Jaime Colón having been reimbursed the $1180 contributed by him to the partnership, and the profits accruing under the contract, according to the estimate of experts, not having been shown, these points of the complaint must be dismissed, in which case there should be no special imposition of costs.

"We adjudge that we should declare and do declare that the complaint should be sustained as to the following points: That the civil partnership of Roig & Colón, established for building purposes, was dissolved by the sole and illegal acts of José Roig Colomer; that the latter is under obligation to make an accounting to Colón, including all the expenses and profits of the partnership up to the day when the contract by the job with Carlos Ereño for the construction of the hereinbefore mentioned portion of road, was terminated, and to pay him his share of the profits up to aforesaid date, José Roig Colomer being hereby ordered to satisfy the amount resulting therefrom, to be determined according to the formalities established by articles 931 *et seq.* of the Law of Civil Procedure. With respect to the delivery of the capital contributed by Colón, inasmuch as it was returned by Roig, the complaint is dismissed, as also with reference to the profits that might have accrued under the contract, as said profits have not been proved, the defendant being acquitted of liability upon both of these matters, without special imposition of costs. So by this our decision, finally adjudging, we pronounce, order and sign. Juan Morera Martinez, Frank H. Richmond, Angel García."

"The undersigned associate judge presents the following dissenting opinion: The findings of fact of the judgment, so far as they do not conflict with the conclusions of law hereinunder set forth, are accepted.

"Furthermore, the contract of civil partnership exists from the moment two or more persons bind themselves to contribute money, property, or industry to a common fund with the intention of dividing the profits among themselves, and it goes without saying that inasmuch as Colón withdrew from the work on April 28, 1900, and subsequently received a draft on the firm of Villar for the amount of the portion of capital contributed by him to the partnership, he is entitled only to a share of the profits of said partnership, accrued up to that date, for to accept the contrary hypothesis, would lead us to admit that a person had a right to share in the profits of a partnership to which he had contributed no money, nor had brought his industry or personal labor.

"From the evidence, taken together, it is shown that there existed an informal contract entered into between the parties for the purpose of carrying out the construction by the job of a portion of road awarded by Carlos Ereño to Roig Colomer; that one of the conditions stipulated for the constitution of said partnership was that each would contribute thereto the sum of three thousand dollars, a condition which, when the work began, had not been complied

with, and was dispensed with without definitely giving it up; and that the non-compliance by Colón with said condition constituted a just cause for the dissolution of the partnership. I must declare and do declare that the complaint should be sustained as to the following points, and dismissed as to all the others, without special imposition of costs: 1. That from January 10 to April 24, 1900, there existed a partnership for the construction of the section of road comprised between the Caguanitas bridge and Camiaco ford, and that each partner had a right to share the profits obtained, out of the money collected on the certificates issued for work executed on said section up to April 24, 1900, in proportion to the capital and materials invested by each in the work performed and store annexed to the work, it appearing that both partners exercised equal powers in the direction and administration of said works; 2. That Roig Colomer, according to article 27 *et seq.* of the Law of Civil Procedure, must render an account to Colón of the profits realized between the aforesaid dates, of discounts allowed to Ereño and all other expenses caused by the works, and of the value of the tools and materials contributed by each to the work and to the store connected therewith; and, 3. The resulting net profits must be divided in proportion to the capital and materials contributed to the partnership by each of the partners.—Frank H. Richmond.''

From the foregoing judgment the representative of the defendant, José Roig Colomer, took an appeal which was allowed both for review and stay of proceedings. The record was forwarded to this Supreme Court after citation of the parties, and the latter having appeared, the appeal was conducted under the proper procedure and a day set for the hearing at which counsel for both parties were present.

*Mr. Hernández López,* for appellant.

*Mr. Texidor,* for respondent.

MR. CHIEF JUSTICE QUIÑONES, after making the above statement of facts, delivered the opinion of the court.

The findings of fact and first five conclusions of law contained in the judgment appealed from are accepted.

Moreover, the record also affords sufficient evidence to declare that upon the formation of the partnership between José Roig Colomer and Jaime Colón, it was agreed that

each should contribute thereto a cash capital of $3000; that the partner Jaime Colón had paid in only $1180, there being no data sufficient to determine the sum contributed by the other partner, José Roig Colomer; that the latter kept the accounts and acted as manager of the partnership while it lasted; and that upon the dissolution of said partnership he took charge of the stock thereof, whence, as a logical consequence, his obligation to account to the other partner for the administration under his charge, from the day the partnership commenced its operations to that of its termination. as also his responsibility for the payment of the portion of profits, if any, accruing to the partner Jaime Colón.

According to article 1682 of the old Civil Code, which is section 1584 of the one in force, a partner who has bound himself to contribute a sum of money and fails to do so, is at law a debtor for the interest thereon, from the day on which he should have contributed the same, without prejudice to also making indemnity for the damages he may have caused thereby; and inasmuch as the partner Jaime Colón has brought into the partnership only $1180 of the three thousand dollars he was bound to contribute in cash, he is a debtor to the partnership for the legal interest on the difference at the rate of six per cent. per annum from the day it commenced operations to that of its termination, the same liability having been incurred by the other partner, José Roig Colomer for the portion of the capital he failed to pay in, as may be shown by the liquidation in due time to be made from the execution of this judgment.

Both partners being persons with capacity to enter into contracts, and the object of the partnership being lawful, the same cannot be declared null, as claimed by counsel for José Roíg Colomer in alleging that the contract was not reduced to a public instrument, this not being a necessary requisite for the constitution of contracts of civil partnerships, unless real property or property rights are contribut-

ed thereto, which is not the case here, in accordance with the provisions of article 1667 of the old, and section 1569 of the revised Civil Code.

As to the causes of the dissolution of the partnership, which the plaintiff attributes to illegal acts for which José Roig Colomer is alone responsible, such an assertion has no foundation whatever, for aside from the failure of the plaintiff to prove it, the conclusion to be drawn from the evidence is that the partnership was dissolved by the voluntary retirement therefrom of the partner Jaime Colón, owing to the poor state of his health which prevented his continuing in the direction of the work on the road. This is confirmed by the fact that he withdrew the cash capital he had contributed to the partnership, and received the same from the hands of the other partner, José Roig Colomer, without any protest or objection whatsoever, as also by the obligation contracted by Roig Colomer to submit to him the inventory and balance-sheet of the partnership, which he did shortly after Colón's withdrawal from the works, although without any result, as Colón had repudiated them and no agreement had been arrived at with the other partner, José Roig Colomer.

The capital to be contributed to the partnership by each partner, besides his personal services, being the same, the profits obtained and losses incurred therein should be apportioned between the partners in equal shares; and inasmuch as the partnership was dissolved by the voluntary withdrawal of the partners therefrom, on April 24, 1900, the partner Jaime Colón is entitled only to a share of the profits obtained by the partnership up to that date.

Costs shall be paid by the litigant who loses his case on all points. In other cases the court shall give an equitable decision in the matter of costs, according to section 63 of General Order No. 118, of August 10, 1899.

In view of the legal provisions cited in the present judgment, we adjudge that, affirming as to the conclusions ac-

cepted, and reversing as to the others, the judgment appealed from, we should declare and do declare that the civil partnership formed between José Roig Colomer and Jaime Colón was dissolved by mutual consent of both partners; that José Roig Colomer is under obligation to render an account to Jaime Colón of all the expenses and profits of the partnership from the day it was formed, that is from January 1, 1900, when it entered upon the work, to the day of its dissolution, on April 24 of the same year; and to pay over to said Colón one-half of the profits realized by the partnership during said period, the aforesaid José Roig Colomer being condemned to satisfy the same; the liquidation made to be prepared in accordance with the formalities prescribed by articles 931, *et seq.* of the Law of Civil Procedure, including therein the legal interest at the rate of six per cent. per annum, on the sums which both partners failed to pay in for the completion of their respective capital, computed from the day the partnership was constituted to that of its termination. As to that part of the complaint which demands the delivery of the capital contributed by Jaime Colón and of profits referred to therein, the same is dismissed, and the defendant, José Roig Colomer, acquitted thereof, with no special imposition of costs in both instances.

Justices Hernández, Figueras, Sulzbacher and MacLeary concurred.